538 So.2d 404 (1989)
Emmett Ray ATWOOD, Sr.
v.
Emile HICKS, a Minor, by Georgia HICKS, Next Friend.
No. 58687.
Supreme Court of Mississippi.
January 11, 1989.
*405 Ellis B. Bodron, Way, Field & Bodron, Vicksburg, K. Hayes Callicutt, Cary E. Bufkin, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, for appellant.
Halbert E. Dockins, Jr., Dockins & Wise, Sorie S. Tarawally, Jackson, for appellees.
Before DAN M. LEE, P.J., and ROBERTSON and PITTMAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This case presents question, first, whether a claim made on behalf of a minor child against his putative father for paternity and for maintenance and support may with court approval be finally settled. We hold that it may. Second, under what circumstances, if any, may such a court approved settlement be reopened, long after the fact, to which we answer, only upon application to the court which approved the settlement followed by proof of fraud, sham, pretense or collusion in the procurement. We reverse and render.

II.
On November 18, 1976, Georgia A. Hicks ("Hicks"), an unmarried female, gave birth to a son, Joseph Emile Hicks ("Emile"). Slightly over eight months later  on August 1, 1977, to be specific  Hicks filed in the County Court of Warren County, Mississippi, a petition to determine paternity, naming Emmett Ray Atwood as defendant and alleging that Atwood was Emile's father. See Miss. Code Ann. §§ 93-9-1, et seq. (1972, as amended). Hicks sought an order of filiation and a judgment that Atwood pay all medical expenses incident to the child's birth and make "periodic payments of support money for said minor child."
Several months thereafter Hicks and Atwood, both of whom were represented by counsel, negotiated a settlement of the pending suit. Pursuant thereto, Hicks petitioned the Chancery Court of the First Judicial District of Hinds County that she be appointed Emile's guardian. It appears that at the time both Hicks and Emile were residents of the First Judicial District of Hinds County. On December 5, 1977, the *406 Chancery Court entered its decree appointing Hicks as Emile's guardian and letters of guardianship were issued to Hicks. Later that same day, Hicks filed in the Chancery Court a petition for authority to settle doubtful claim. Miss. Code Ann. § 93-13-59 (1972). Hicks executed the petition in her capacity as Emile's mother and guardian, in her individual capacity, and as "next friend". The petition sought approval of a financial settlement whereunder Atwood would pay to Hicks the sum of $18,000.00 and be acquitted of further responsibility for Emile's support.
On the same day, the Chancery Court entered its decree approving the settlement. The Court recited that Atwood was willing to make the payment even though he
has denied that he is the father of the said child, and asserts that he has a good, sufficient and complete defense to the action.
The decree further recited that Atwood was a married man with a good reputation in the community and that he desired to resolve the matter short of "a public disposition". Of the $18,000.00 settlement amount, the Court authorized some $7,800.00 to be paid to Hicks individually as reimbursement for her expenses incident to the birth and support of the child to date. The Court then decided that $7,200.00 was to be paid to Hicks' attorneys for their services and that the remaining $3,000.00 be placed in the guardianship estate. The decree further recited that Hicks was
directed to execute any and all documents necessary to complete the compromise and complete release of the said Emmett Ray Atwood.
On December 7, 1977, the County Court of Warren County, Mississippi, entered its order dismissing Hicks' paternity action "with prejudice."
All of this is background to the present proceedings which were commenced on May 1, 1987, when Hicks, as Emile's next friend, filed in the Chancery Court of Warren County, Mississippi, a new complaint for paternity, child support and order of filiation. See Palmer v. Mangum, 338 So.2d 1002, 1003 (Miss. 1976). Again Atwood was named as defendant. In due course, Atwood moved to dismiss citing, among other grounds, the 1977 settlement, which has been described above. On August 4, 1987, the Chancery Court of Warren County finally denied the motion to dismiss and on the same date denied Atwood's application for an interlocutory appeal.
Atwood promptly applied to this Court for leave to file an interlocutory appeal and for a stay of proceedings in the Chancery Court pending said appeal. Being of the view that such might materially advance the ultimate termination of this litigation, Kilgore v. Barnes, 490 So.2d 895, 896 (Miss. 1986), we granted Atwood's interlocutory appeal by order entered August 26, 1987, and stayed all proceedings in the Chancery Court.[1]

III.
Atwood presents a number of issues on this interlocutory appeal. Whether and to what extent the 1977 court-approved settlement is enforceable are all we need consider.
Our law empowers guardians, acting with chancery court approval previously obtained, to "compromise claims due their wards." Miss. Code Ann. § 93-13-59 (1972). In proceedings outlined above, Hicks, as Emile's guardian, sought and obtained approval of the Chancery Court of Hinds County for the $18,000.00 settlement of her claims for medical expenses incident to pregnancy and birth and for past and future support of the child Emile. We have examined these proceedings as they appear in the record and they are complete and regular on their face and, as such, entitled to the customary presumption of validity. See Bolls v. Sharkey, 226 So.2d 372, 376 (Miss. 1969). If the settlement be valid and enforceable, of course, no subsequent *407 action may be brought upon the claims so compromised.
Emile, who would now be some twelve years of age, mounts a number of attacks upon the 1977 settlement proceedings. First, he argues that claims for paternity and support may not be compromised, that, indeed, such would be contrary to public policy. The short answer is found in our Mississippi Uniform Law On Paternity where it is provided "that an agreement of settlement with the alleged father is binding only when approved by the court." Miss. Code Ann. § 93-9-49 (1972). True, this statute would seem to contemplate "the court" being that in which the paternity action is pending. In this instance that would refer to the County Court of Warren County. As Atwood resided in Warren County, venue of the paternity action was proper there. See Metts v. State Department of Public Welfare, 430 So.2d 401, 405 (Miss. 1983).
On the other hand, it would ordinarily be proper for the court in which the guardianship is pending and in which both guardian and ward reside to act upon a petition for approval of settlement of a doubtful claim.[2] This is what was done here. If Atwood had any objection to venue, it was incumbent upon him to have said so long before now, for defects in venue are waived if not timely asserted. H & W Transfer & Cartage Service v. Griffin, 511 So.2d 895, 901 (Miss. 1987); Educational Placement Services v. Wilson, 487 So.2d 1316, 1320 (Miss. 1986); Wofford v. Cities Services Oil Co., 236 So.2d 743, 746 (Miss. 1970). We have expressly held applicable in paternity actions the basic premise that venue may be waived. Belk v. State Department of Public Welfare, 473 So.2d 447, 451 (Miss. 1985). Here Emile is the party questioning venue. Having, through his guardian, selected the venue for the settlement proceedings, he is estopped to complain.
Emile calls to our attention cases from this and other jurisdictions to the effect that parents cannot contract away rights vested in minor children. See Carlton v. Carlton, 485 So.2d 309, 310 (Miss. 1986); and Department of Health and Rehabilitative Services v. Wyatt, 475 So.2d 1332, 1333 (Fla.App. 1985). Certainly it is true that a parent acting extrajudicially cannot compromise a child's claim to support. But where, as here, chancery court approval was sought and obtained, the opposite result follows.
The premise is not new, as our law empowers parents acting with court approval to settle child support matters incident to divorce proceedings, Miss. Code Ann. § 93-5-2 (Supp. 1988), notwithstanding that the right to support belongs to the child. See Alexander v. Alexander, 494 So.2d 365, 367 (Miss. 1986); Brand v. Brand, 482 So.2d 236, 238 (Miss. 1986); Wilson v. Wilson, 464 So.2d 496, 498 (Miss. 1985); and Trunzler v. Trunzler, 431 So.2d 1115, 1116 (Miss. 1983).
Emile argues that our law authorizing guardians to settle doubtful claims of minors was enacted at a time when we had no statute on paternity. From this Emile concludes that Section 93-13-59 confers no authority to settle a doubtful claim of the sort here at issue. It is certainly true that Section 93-13-59 can be traced as far back as 1880. See Miss.Code § 2110 (1880). Our Uniform Law on Paternity was not enacted until 1962. Miss. Laws, ch. 312 (1962). No doubt for the first eighty-two years of its life, the statute authorizing settlements of doubtful claims did not contemplate the support features of paternity claims. However accurate Emile's historical argument may be, we find nothing in the sort of claims authorized in our Mississippi Uniform Law on Paternity which would preclude their being so settled. Any argument that settlement of such claims is contrary to public policy is undercut by Section 93-9-49 authorizing settlements with court approval.
The procedure employed here was no different from that by which other doubtful *408 claims of minors may be settled. Consider, for example, the personal injury claim asserted in a tort action brought in circuit court, perhaps in a county other than where the child resides because of venue rights of the defendant. Where a settlement is to be made before trial, our law requires that the parties retire to the chancery court of the minor's residence, establish a guardianship, and proceed as was done here. See Mississippi State Bar Association v. Moyo, 525 So.2d 1289, 1294-97 (Miss. 1988).
Notwithstanding, we are told that no one appearing before the Chancery Court in December of 1977 had Emile's interests at heart. Whatever her interests may have been in fact, Hicks, as lawfully appointed guardian, was certainly charged to protect Emile's interests.[3] If she has failed in some duty owed Emile, he has familiar remedies.[4]See Miss. Code Ann. § 93-13-23 (1972) (providing for removal of guardian); United States Fidelity & Guaranty Co. v. Jackson, 111 Miss. 752, 72 So. 150 (1916) (suit by ward for loss of funds); Patty v. Williams, 71 Miss. 837, 15 So. 43 (1894) (suit for accounting); see generally Miss. Code, Title 93, ch. 13 (1972 as amended).
Without further ado, and subject to what we say in Section IV below, we hold that the 1977 settlement is enforceable and that the now twelve-year-old Joseph Emile Hicks and Georgia A. Hicks, his mother, are bound thereby. By reason thereof, the Chancery Court should have granted Atwood's motion to dismiss.

IV.
What we have said above is sufficient to render the 1977 decree of the Chancery Court of the First Judicial District of Hinds County immune from collateral attack in the present proceedings. See Hollingsworth v. Central Oil Co., 236 Miss. 779, 112 So.2d 518, 521 (1959); Eastman-Gardner v. Leverett, 141 Miss. 96, 106 So. 106, 109 (1925); McKinney v. Adams, 95 Miss. 832, 50 So. 474, 476 (1909); Moore v. Ware, 51 Miss. 206, 209-10 (1875). This rule is applicable to consent decrees to the same extent as any other final order or judgment. See Krebs v. Bradley, 190 So.2d 886, 891 (Miss. 1966); Bolls v. Sharkey, 226 So.2d 372, 376 (Miss. 1969).
This is not to say that Emile is wholly without a remedy. If in fact it may be shown that the 1977 decree was procured by fraud  as Emile alleges  entitlement to relief may follow. See City of Starkville v. Thompson, 260 So.2d 191, 192 (Miss. 1972); Krebs v. Bradley, 190 So.2d at 891. Our law has long recognized that the rights of minors overreached in settlements will be scrupulously regarded. Union Chevrolet Co. v. Arrington, 162 Miss. 816, 826-27, 138 So. 593, 595 (1932). We have recently reiterated this policy. Mississippi State Association Bar v. Moyo, 525 So.2d 1289, 1293-96 (Miss. 1988). But such an action must be brought in the court wherein the decree sought to be attacked was rendered, in this instance, the Chancery Court of the First Judicial District of Hinds County, Mississippi.
Emile defends his attempt to challenge the 1977 decree in the Chancery Court of Warren County by reference to our venue statute applicable to paternity actions. He points out quite correctly that any paternity *409 action must be brought in the county where the alleged father resides where he is a resident of this state. Miss. Code Ann. § 93-9-17 (1972); Belk v. State Dept. of Public Welfare, 473 So.2d 447 (Miss. 1985). But this does not change the rule that an attack upon a decree on grounds it has been procured by fraud, sham, pretense or collusion must be brought in the court which entered the decree. To succeed in his action, Emile must apply to the Chancery Court for the First Judicial District of Hinds County and convince that court that the 1977 decree was procured by fraud, sham, pretense or collusion[5] and thus should be set aside, and only then may he proceed under our paternity statutes against Atwood in the appropriate Warren County court.
Our judgment reversing the decision of the court below and rendering judgment for Atwood here is without prejudice to Emile's right to proceed in the Chancery Court of the First Judicial District of Hinds County to attack the 1977 decree on such grounds as may be appropriate.[6]
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and ZUCCARO, JJ., concur.
NOTES
[1] Since January 1, 1988, applications for interlocutory appeal have been governed by Rule 5(a)(1), Miss.Sup.Ct.Rules.
[2] A combined reading of our guardianship statutes and the Uniform Law on Paternity reveals a regime of concurrent jurisdiction over settlement of paternity claims, either in the chancery court, as was done here, or in court hearing the paternity action  the county court, family court, circuit court or chancery court. Miss. Code Ann. § 93-9-15 (1972).
[3] Appellee's counsel appears under a general misimpression on whose behalf the December 1977 Chancery Court proceedings were had. The Petition for Authority to Settle Doubtful Claim, first and foremost, was filed on behalf of Emile. Hicks was in her capacity as legal and natural guardian but a conduit for an application on behalf of her son. By law such proceedings "shall be brought in the name of the general guardian for the use and benefit of such ward... ." Miss. Code Ann. § 93-13-27 (Supp. 1988). The same is true of the 1977 paternity action in Warren County, although that action was in no necessary sense a prerequisite to the Section 93-13-59 Chancery Court settlement.
[4] As Emile proceeded in December, 1977, through a guardian, our decision today is not informed by such "next friend" cases as Baker By Williams v. Williams, 503 So.2d 249, 252 (Miss. 1987); and Palmer v. Mangum, 338 So.2d 1002, 1003 (Miss. 1976). As Emile's claim for support has been settled with approval of the Chancery Court, Baker and Palmer similarly fail to inform our consideration of the timeliness issue.
[5] In considering a proposed settlement of a paternity suit  and in deciding whether that settlement is reasonable and in the best interests of the child  the court is charged to familiarize itself with the evidence pro and con on the issue of paternity. More particularly, the court is charged with knowledge of recent developments in methods of proof of paternity. The availability of such scientific processes is relevant to whether a settlement was procured by fraud or collusion. We are reliably informed that today the so-called HLA test, when used in conjunction with standard serologic testing, can "produce a high degree of discrimination either excluding or including a given male as the father of a particular child." Baker By Williams v. Williams, 503 So.2d 249, 253 (Miss. 1987). Whether such procedures were available in 1977, we do not know.
[6] Nothing said here should be taken to indicate any view on our part regarding any defenses any party may assert in any such proceedings in the Chancery Court proceedings.